STATE OF MISSOURI, Respondent, v. JOHN T. McEL-
HANEY ET AL., Appellants.

**St. Louis Court of Appeals, February 9, 1886.**

1. SCIRE FACIAS—VARIANCE—RECOGNIZANCE. —It is no defence to a pro-
ceeding by *scire facias* upon a forfeited recognizance in a criminal
case, that the writ recites that the recognizance was taken before
A B, justice of the peace, while it shows that it was taken before
A B, probate judge.

2. —————— A recognizance taken in such a case is not void because
it requires the principal cognizor to appear in court on a day already
passed.

3. CONTRACTS—REFORMATION—CORRECTIONS.—Manifest clerical errors
in a written instrument will be corrected to conform to the obvious
intent of the parties thereto.

4. BAIL—JURISDICTION—PROBATE JUDGE.—A probate judge has the
power to take bail of a prisoner held to answer a charge of crime in
the county for which he is probate judge, without issuing a writ of
*habeas corpus.*

APPEAL from the Newton County Circuit Court, P.
H. EDWARDS, JUDGE.

*Affirmed.*

BENTON & CRAVENS, for the appellants: The circuit
court erred in permitting appellee to read in evidence the
recognizance, because it varies from the one recited in
the order of forfeiture and *scire facias,* and because it is
void on its face, for the reason it requires Miller to do an
impossible thing, viz.: to appear before the circuit court
of Newton county on the *second Monday in February,
1882.* 1 Pars. Cont. (5 Ed.) 459 ; 2 *Id.* (5 Ed.) 673 ; 1
Story, Cont. (4 Ed.) 565 sect. 462 ; 1 Wait, Act. & Def. 186,
sect. 15 ; *The State v. Hopkins,* 30 Mo. 404. The second
recognizance was void because P. H. Edwards had no
power as justice of the peace to take Miller's recognizance
after he was committed to jail. Rev. Stat., sect. 1754.

Said P. H. Edwards, as probate judge, had no power or jurisdiction to take bail and discharge Miller from jail except on writ of *habeas corpus*, which it is agreed was not issued in this case. *The State v. Randolph*, 22 Mo. 474; s. c., 26 Mo. 213; *The State v. Nelson*, 28 Mo. 13; *The State v. Ferguson*, 50 Mo. 409; *The State v. Swope*, 72 Mo. 399.

R. W. JONES, for the respondent: The bond was given October 2, 1882, and the cause was by operation of law continued to the February term of circuit court, 1883, when the forfeiture was taken. So that the condition of the bond was not for the performance of an impossible thing; and the forfeiture was taken at the proper time and in conformity with the condition of the bond. *The State v. Potts*, 60 Mo. 369; *The State v. Randolph*, 22 Mo. 475. The variance between the bond and the *scire facias* is unavailing for the appellants. The appellants answered and thereby waived all errors in the writ and all objections to the service, and the sufficiency of the writ could not, thereafter, be inquired into. The record, and it only, was in issue. *The State v. Randolph*, 22 Mo. 481, foot of the page. The bond was taken and certified by P. H. Edwards, probate judge, of Newton county, Missouri. He was judge of a court of record. Rev. Stat., sect. 1175. Being judge of such court he was authorized by section 1754, Revised Statutes, to take and certify the bond.

THOMPSON, J., delivered the opinion of the court.

This is a proceeding by *scire facias* on a forfeited recognizance in a criminal case. The issues were submitted to the court and judgment was rendered in favor of the state to the use of the school fund of the county for the sum of six hundred dollars and interest, according to the terms of the obligation.

Three points are relied upon by the appellants.

I. That the circuit court erred in permitting the state to read in evidence the recognizance, because it

varies from the one recited in the order of forfeiture and *scire facias*. We see nothing substantial in this objection. The recognizance purported on its face to have been entered into before P. H. Edwards, probate judge, whereas the *scire facias* recites that the recognizance was taken by P. H. Edwards, justice of the peace. The record shows that P. H. Edwards was both a justice of the peace, and probate judge for the county; that, as justice of the peace, he held the preliminary examination of the accused and committed him to jail in default of bail; and that he afterwards, in his character of probate judge, admitted him to bail in the sum of six hundred dollars, taking the recognizance here proceeded upon.

In some states, following the former English practice, a *scire facias* on a forfeited recognizance seems to be a writ merely and the practice is for the state to file a declaration; but in this state the practice is for the state not to file any other pleading; but the *scire facias* answers the dual purpose of a writ and a declaration. Nevertheless, the issue which arises is whether there is such a record as is recited in the *scire facias*. This issue is to be tried by the whole record, including other matters of record in the court into which the *scire facias* is returned and, therefore, a pleading to the *scire facias* is considered, as a pleading to the record. *The State v. Randolph*, 22 Mo. 474.

In this case the question was raised upon a demurrer; but it was said: "No fact need be shown by the state, except what appears upon the entries and files of the court, and upon the demurrer; therefore, reference may be had to them, and if sufficient appear upon them to entitle the state to an award of execution, the demurrer ought to be overruled, without any reference to the omissions in the writ." *Id.* 483.

The essential office of the *scire facias*, then, is to bring the cognizors into court where the question of their liability is tried by the whole record, of which the recognizance is a part, and if their liability appears from this record, it does not appear how a slight variance in a

matter of description between the recognizance and the order of forfeiture and the *scire facias*, which follows the order of forfeiture, could prejudice them or affect their liability.

II. The next objection is that the recognizance is void on its face because it required the principal cognizor to do an impossible thing, namely, to appear before the circuit court of Newton county on the second Monday in February, 1882, whereas the recognizance was itself taken at a subsequent date, namely, on the second day of October, 1882. This objection is equally without merit. It is a patent clerical error which consisted in writing 1882 instead of 1883. The whole record, by which the matter is to be tried, shows this. We know judicially that the next regular term of the Newton circuit court, after the recognizance was taken, was required by law to be held on the second Monday in February, 1883. The record shows that it was in fact so held. The parties entering into this recognizance can not be supposed to have meant an absurdity. They meant to do what the law permitted them to do in such a case, to enter into an obligation of record conditioned that the accused should appear at the next regular court for the county. In many cases the courts, where the matter is certain to a common intent, correct the meaning of particular words in written instruments so as to make them read differently, sometimes the very opposite from what they fairly import, where the sense manifestly requires it to be done. Thus, in interpreting a statute, the word "south" has been held to mean "north." *Palms v. Skawano County*, 21 N. W. Rep. 77. And see cases there cited. All modern courts appear to have united upon the rule, in cases at law as well as in cases in equity, that obvious clerical mistakes on the face of a written contract, may be corrected with reference to the manifest intent of the parties, as gathered from the whole instrument. See, Wald's Pollock on Contracts, 453, and numerous cases there cited.

In an English case at law the rule was said to be that

"greater regard is to be had to the clear intent of the parties than to any particular words which they have used in the expression of their intent." *Ford v. Beach*, 11 Adolph. and Ellis (N. S.) Q. B. 866.

And in a modern case in the House of Lords, it was laid down by Lord St. Leonards, himself a master in the art of conveyancing, that "both courts of law and of equity may correct an obvious mistake on the face of an instrument without the slightest difficulty." And, accordingly, a provision in a deed of separation indemnifying the husband was held to read so as to indemnify the wife. *Wilson v. Wilson*, 5 H. L. Cases, 66.

So, an American court of law construed a tripartite deed, which conveyed the estate to the party of the second part, as conveying it to the party of the third part. *Sisson v. Donnelly*, 36 N. J. L. 432.

And a court may presume from the mere inspection of a written instrument that words, which, though they make sense, give a result which is unreasonable and repugnant to the general intention and to the usual form of such instruments, were inserted by mistake. *Re De La Touche's Settlement*, L. R. 10 Eq. Cas. 599, 603.

A recognizance, though an obligation of record, is also a contract between the state and the cognizors, and it is not doubted that it is to be interpreted by the same rules that apply to other contracts. So interpreting this recognizance we hold that 1882 should read 1883.

III. The third point is equally without merit. It is, that P. H. Edwards, as probate judge, had no jurisdiction to take bail or to discharge the accused from jail, except after issuing a writ of *habeas corpus*, which was not issued in this case. This point is equally untenable in view of the applicatory statutes, and upon general principles. By section 1177, Revised Statutes, probate courts are courts of record. By section 1754, Revised Statutes, it is provided that "whenever any person shall be committed to jail on a warrant of commitment by any magistrate for a bailable offence, the recognizance, with proper security, may be taken by the court or judge of

the court having criminal jurisdiction, or by any judge or justice of the county court, or any judge of a court of record." Outside of this, it is conceded that the probate judges in this state have power to issue writs of *habeas corpus* to bring up prisoners confined in jail within the limits of their respective counties, and to hear and determine the causes of their detention. Rev. Stat., sect. 2618.

A court which may discharge absolutely on *habeas corpus* may ordinarily discharge on the giving of bail, for this is simply to discharge *sub modo ;* section 2654, Revised Statutes, expressly confers power on the court or magistrate hearing the *habeas corpus*, to take bail, if good bail be offered. To this rule there are some exceptions. Thus, a prisoner held as a fugitive from the justice of another state, or of a foreign country, might be discharged on *habeas corpus* for illegality in the proceedings, although it would not be competent for the court or judge hearing the *habeas corpus* to take bail, conditioned that he appear and answer in the foreign jurisdiction. So, a probate judge or a county court justice may have power to take bail in case of a prisoner held to answer upon a charge of crime in his own county without the issuing of a writ of *habeas corpus*, although he would not have this power in case of a prisoner held to answer in another county, unless the prisoner was brought before him on *habeas corpus*. *The State v. Nelson*, 28 Mo. 13, 14 ; *The State v. Ferguson*, 50 Mo. 409.

But this rule has no application in the present case, because here the officer taking the recognizance was probate judge of the county in which the prisoner was held to answer. The probate judge, then, having power to admit the prisoner to bail, either upon *habeas corpus* or without the issuing of this writ, it is quite immaterial how the prisoner was brought before him.

The judgment will be affirmed. It is so ordered. All the judges concur.