HOME OF THE FRIENDLESS, Respondent, v. HENRIETTA BERRY, Appellant.

St. Louis Court of Appeals, April 4, 1899.

Guardianship of Children. In the case at bar the evidence substantially shows that the moral turpitude of the mother of the infant children is such that the trial court correctly held that the mother is not a fit person to care for them.

*Appeal from the Hannibal Common Pleas Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

JOHN L. ROBARDS for respondent.

The allegation of place of residence of the parent and children is sufficient. The domicile of the parent is the domicile of the orphan minor children, equally. DeJarnett v. Harper, 45 Mo. App. 415, 421; Schouler's Dom. Rel. 312. So as the allegation of the making of the note includes the consideration. The allegation that "said Henrietta Berry is an immoral person, without visible means of support, and is rnfit and incompetent for the duties of motherhood and

guardianship of said orphan minor children" covers ample ground and justifies the action of the court. She is both unable and unfit to discharge her duty to the children. Bernice Scarritt, 76 Mo. 565, 570; Weir v. Marley, 99 Mo. 484, 494, lower; Hard on Habeas Corpus [2 Ed.] 456. "Abandonment" of the elder daughter to the embrace of a brute, and of virtue for herself. "Ill-treatment or neglected condition,". to compel those two little girls to receive their first and lasting impressions of right and pure living from association with a mother who did caress the destroyer of their sister, and whose general character is that of a persistently immoral, depraved. woman? The court, in passing upon the sufficiency of the averment, may in truth say of her: "Do deeds make. Heaven weep; all earth amazed, For nothing canst thou to damnation add, Greater than that."—Othello, Act III. The defendant does not deny her immoral conduct, "a deed without name," with Raioum, testified to by Lucy May, and personally stated and admitted by her to Justice Smeathers, and failed utterly to either allege in her answer or prove or assert a change of character when voluntarily testifying in her own behalf. "Then silence becomes pregnant with inference." Leeper v. Baker, 85 Mo. 224. The true theory of the "gospel," alluded to in defendant's brief, page 11, is slavery to sin until change of heart, when "confession is made unto salvation," Romans 10:10, and the law, under the evidence, makes her *particeps criminis* with Raioum in the ruin of her own daughter. "Every presumption is made against a wrongdoer." Brown's Legal Maxims, p. 844. When a parent fails to perform this natural duty, he forfeits his right to the custody and control of his offspring. This breach of sacred obligation occurs either by immorality or abandonment, or deed, etc. Good morals, virtue, is a fundamental principle required of a parent in rearing his child. This doctrine is recognized by the highest authorities, and whenever the best interest of the child, the polar star of guidance, demands a change, the courts will make a proper

disposition of the case.    Story Eq. Jur., p. 1341; 2 Bishop on Mar. & Div. p. 546; Wier v. Marley, *supra.*

J. J. HENDERSON for appellant.

This proceeding was instituted under chapter 77 of the Revised Statutes 1889, section 5339 requires that the application "shall state the name and place of residence of the child and the parents, and the circumstances of the abandonment, ill-treatment or neglected condition."    No such allegation is made in the petition and it is therefore defective, and the trial court ought to have sustained the objection of defendant to the introduction of any evidence.    Revised Statutes 1889, pp. 1286-7.    The allegation in the petition is that defendant is an "immoral person, without visible means of support."    The proof is undisputed that since she voluntarily committed her children to the "Home" temporarily she has received her pension, built her a home and has the means to take care of her children.    There is no averment nor is there a scintilla of evidence that defendant is not a virtuous woman, or that she is lewd and adulterous in her habits.    She may be a woman of "immoral" character in the estimation of some persons and yet fit and competent to have the care and custody of her children.    What may be immoral in the estimation of one may be moral in the opinion of another.    Hence we say there was an entire want of proof necessary to justify the finding of the court. The law after the death of the father makes the mother the natural guardian of the children and gives her the custody and care of their persons, education and estates.    R. S. 1889, sec. 5279.    To take away from her that right and rob her of the society of her children, the proof of her unfitness to have them ought to be clear and undisputable.

BLAND, P. J.—Henrietta Berry, the appellant, is a widow residing in the city of Hannibal in this state.    She is the mother of two infant children, Edna, aged eight years,

and Annie, aged six years. The respondent is a benevolent association organized under the provisions of article 10, chapter 42, Revised Statutes 1889, having for its object, among other things, the care and protection of homeless and friendless children. In April, 1898, the respondent applied by petition to the probate court of Marion county for its appointment as guardian of the two minor children of Mrs. Berry, alleging that their mother was an immoral person, without visible means of support, and as being unfit and incompetent for the duties of motherhood and guardianship of said children. The probate court heard the evidence and appointed the respondent the guardian of said children, over the objection and against the protest of their mother, who had filed a general denial to the petition. An appeal was taken by Mrs. Berry to the Hannibal court of common pleas, where the evidence was again heard and the judgment of the probate court appointing respondent guardian of the two children was affirmed. Mrs. Berry duly appealed to this court.

From the bill of exceptions it appears that Mrs. Berry in November, 1897, being financially unable to care for her children placed them in the hands of respondent, to remain there until her financial condition should so improve as to enable her to take care of her children. Subsequently she obtained from the general government a pension certificate allowing her eight dollars per month as the widow of a dead soldier, and two dollars per month to each of her children, and received also three hundred and odd dollars as back pension. With the $300 she built a small but comfortable dwelling on lots in the city of Hannibal which she owned in her own right. After receiving the pension certificates and back pay she demanded the return of her children; whereupon the respondent filed its petition in the probate court for its appointment of guardian of said children under the provisions of section 5338, Revised Statutes 1889. The evidence does not show that Mrs. Berry had abandoned her children, but on the

contrary shows that she had no such intentions when she delivered them to respondent to be temporarily cared for, nor does the evidence show that she is any longer financially unable to take care of her children; but the evidence does substantially show that her moral turpitude is such as to make her unfit to care for and raise up these two little girls to decent and respectable womanhood. It also satisfactorily appears from the evidence that the respondent association has the ability to properly care for and keep the said children and that its purpose is to properly keep and train them. An examination of the whole record and a close and careful reading of the testimony as preserved in the bill of exceptions has satisfied us that the common pleas court arrived at the correct conclusion when it found that Mrs. Berry is not a fit person to care for these children. The court erroneously permitted the respondent to read in evidence an indictment against one Raioum charging him with the commission of a crime against Lucy May Berry, another, but older child of Mrs. Berry, but this error does not affect the merits, as it did not tend to prove any offense against Mrs. Berry. The competent and relevant evidence is ample and sufficient to support the judgment and we affirm it. All concur.