CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1914

*(Continued from Volume 257.)*

THE STATE ex rel. NICK T. CAVE, Prosecuting
Attorney of Callaway County, Appellant, v. J. W.
TINCHER, Judge of Probate Court.

In Banc, May 4, 1914.

1. CHILDREN: Rights of Parents and Public. If it be shown
that parents are corrupt, immoral or otherwise incompetent,
the State, which has a paramount interest in the proper per-
sonnel of its members as citizens, may, where it is found neces-
sary, regulate the care, control or education of their children,
even to the extent of taking them out from under their custody
and control. This power, exercised without abuse, is a legal
and just restriction upon personal liberty required on account
of the welfare of the community. Legislative acts providing
that neglected and delinquent children may by the proper court
be taken from the care of their parents and committed to the
care and custody of the State, do not constitute an invasion
of personal rights, and are not a denial of due process of law,
even though the proceeding be summary.

2. COURTS: Jurisdiction Fixed by Constitution. As a general
rule where a court is established and its jurisdiction specifically
fixed by the Constitution, the Legislature is powerless to di-
minish, enlarge, transfer or otherwise infringe upon the powers
conferred.

258 Mo.] (1)

3. ———: ———: Adding to Powers Conferred. Where the Constitution, in defining the jurisdiction of courts, uses no words of restriction, the Legislature is authorized to confer upon them or the judges thereof other duties, powers and functions.

4. ———: ———: ———: Probate Courts: Uniformity of Jurisdiction. While the Legislature has power to confer upon probate courts authority, duties and functions not enumerated in the Constitution, the powers conferred must apply alike to all probate courts in the State, otherwise the statute conferring the powers will contravene that provision of the Constitution (Sec. 35, art. 6) which declares that probate courts shall be uniform in their organization, jurisdiction, duties and practices.

5. ———: Probate Courts as Juvenile Courts: Felony: No Indictment or Information. The Act of 1913 (Laws 1913, pp. 148-154), conferring upon probate courts the care and control of neglected and delinquent children under seventeen years of age, except those charged with offenses punishable by death or imprisonment in the penitentiary, defining a delinquent child as one that "violates any law of this State," and authorizing a summary and *ex parte* proceeding upon the filing by any reputable person of a petition setting forth the facts, verified by affidavit, there being no attempt to change the class or character of offenses designated in the Constitution and statutes as felonies and misdemeanors, is invalid, as violative (1) of that provision of the Constitution declaring that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment and information," and (2) of that other provision declaring that "in criminal prosecutions the accused shall have the right to appear and defend, in person or by counsel; to demand the nature and cause of accusation against him," and "a speedy public trial by an impartial jury of the county," etc.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris*, Judge.

AFFIRMED.

*John T. Barker*, Attorney-General, *Thomas J. Higgs*, Assistant Attorney-General, and *S. P. Howell* for appellant.

(1) The act is not in violation of section 12 of article 2 and section 22 of article 2 of the Constitu-

tion of Missouri. These sections of the Constitution do not apply to the act in question for the reason that the care of and custody of a neglected and delinquent child and the superintending control thereof as exercised by the court is not a criminal prosecution. In this State it has been held that a prosecution under a city ordinance is not a criminal prosecution. It is civil and quasi criminal in character. Ex parte Holl-wedell, 74 Mo. 395; St. Louis v. Ameln, 235 Mo. 678; Delaney v. Police Court, 167 Mo. 667. "A crime is an act committed in violation of a public law." 4 Black. Com. 5; State v. Marmonget, 111 La. 225; Mol-ter v. Knowack, 158 N. Y. 482; 22 Cyc. 525. The juvenile act in question does not authorize, contemplate or sanction the prosecution of a child under the age of seventeen years. The child is to be taken care of by the State when found in the conditions described as being "neglected" and "delinquent." It is not intended that there should be a prosecution, but on the contrary a supervision by the State over its children for the purpose of improving their condition both morally and physically. Marlowe v. Comm., 142 Ky. 113; In re Sharpe, 15 Idaho, 120; Rooks v. Tindall, 138 Ga. 863; Ex parte Jamuszewski, 196 Fed. 123, 129; Commonwealth v. Fisher, 213 Pa. St. 52; Van Walters v. Board, 132 Ind. 569; Industrial School v. Supervisors, 40 Wis. 328. This court has held in the case of Ex parte Loving, 178 Mo. 194, that a juvenile act similar to the act in question was constitutional and also has approved the doctrine of *"parens patriae."* Again it has been held that juvenile laws such as the one in bar are in no sense criminal and are not intended as a punishment, but are calculated to save the child from becoming a criminal. Restraint is necessary in any institution of learning, however humble. Civilized society cannot live without it. Mill v. Brown, 31 Utah, 473; Pugh v. Bowden, 54 Fla. 309; Lindsay v. Lindsay, 257 Ill. 328; In re Ferrier, 103 Ill. 367.

(3) Neither does this act in letter or spirit conflict with the provisions of subdivisions 2 and 15 of section 53 of article 4 of the Constitution of Missouri. A law is not local and special when it operates generally upon all persons within the class. A law may practically apply to one locality and still not be local or special. State ex rel. v. Ryan, 232 Mo. 85; Ex parte Loving, 178 Mo. 209; Ex parte Lucas, 160 Mo. 218; State v. Hayes, 88 Mo. 344; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Wofford, 121 Mo. 61; Kenefic v. St. Louis, 127 Mo. 1; Kansas City v. Stegmiller, 151 Mo. 206; State ex rel. v. Higgins, 125 Mo. 364; State v. Etchman, 189 Mo. 658; Coffey v. Carthage, 200 Mo. 624; Ex parte Swann, 96 Mo. 51; State ex rel. v. Fort, 210 Mo. 512. A classification by population has been sustained in other states and held not to be within the constitutional provisions as being local and special. Gas Trust Co. v. Harless, 131 Ind. 452; State v. Berka, 20 Neb. 378; Haskel v. Burlington, 30 Iowa, 236; Iowa Ry. Co. v. Soper, 39 Iowa, 115; Pennsylvania Co. v. State, 142 Ind. 439; Rambo v. Larrabee, 67 Kan. 634. (3) The act in question does not violate the provisions of section 28, article IV of the Constitution of Missouri. A juvenile court bill similar to the one at hand has been held by this court to contain only one subject, and not void and unconstitutional. The title is germane to the subject, children. State v. Loving, 178 Mo. 204. (5) This act is not in violation of sections 34 and 35 of article 6 of the Constitution of Missouri. (a) Jurisdiction conferred by these sections of the Constitution on probate courts does not include the jurisdiction and duties contemplated in the act in question. Section 34 carved out and set aside from the jurisdiction granted circuit and county courts certain subjects and gave the probate court exclusive jurisdiction thereof. Young v. Boardman, 97 Mo. 190. What the Constitution has given, the Legislature cannot take away. Redman v. Railroad, 225 Mo. 731.

The only provision in section 34 that could possibly confer upon the probate court a jurisdiction which would include the relationship over a minor as contemplated by the act in question is the provision which provides that the court shall have jurisdiction over all matters pertaining to the appointment of guardians and curators of minors. The relation created by the act does not confer authority over the child's property; nor does it confer the legal authority to represent a child in court. The jurisdiction is neither criminal nor probate, but tends more toward criminal jurisdiction than probate jurisdiction. The jurisdiction assumed is more an exercise of the State's police power, viz.: to benefit the State at large and to guard its morals, safety and health, thereby insuring such economic conditions that civilization and citizenship will be advanced to a higher and more perfect standard. The guardianship, if it can be called a guardianship, intended to be created by the words "guardians and curators" is a guardianship of comparatively recent origin assumed by the State for the purpose of protecting its children in such manner that citizenship and civilization may be of a higher physical, mental and moral standard. The Legislature of this State, however, has already indicated that a similar act to the one in question was not of probate jurisdiction as defined by the Constitution of this State in section 34 of article 6. The juvenile court act of 1903 conferred the jurisdiction of juvenile matters upon the circuit courts in counties having 150,000 population and over. If such jurisdiction was of probate jurisdiction the act was in violation of the Constitution when it conferred that jurisdiction upon the circuit court. This court has declared the act of 1903 valid and constitutional. Ex parte Loving, 178 Mo. 194. The court, in rendering the decision in the case of Ex parte Loving, supra, must have considered that the exercise of jurisdiction given under juvenile acts was not an ex-

ercise of probate jurisdiction within section 34 of article 6 of the Constitution. If juvenile courts are of probate jurisdiction, under the Constitution such jurisdiction is exclusive in the probate courts and circuit courts could not constitutionally exercise such jurisdiction. (b) Section 35 of article 6 only requires uniformity as to probate jurisdiction and duties conferred upon probate courts by section 34 of article 6. Section 35 of article 6 requires that probate courts shall be uniform in organization, jurisdiction, duties and practices. This section of the Constitution refers to section 34 of article 6 and means a uniformity of probate courts there described. The only jurisdiction and duties, therefore, that of necessity under the Constitution need to be uniform is that jurisdiction and those duties described in section 34. In accordance with the section above the exercise of jurisdiction over juvenile courts is not an exercise of probate jurisdiction as defined by the Constitution. (c) The Legislature may place upon officers and judges of this State such additional duties as it may deem proper. The Legislature of this State by statute has frequently cast upon officers, courts and judges of this State duties different and separate and apart from those placed upon such officers, courts and judges by the Constitution in creating such offices. Bank v. Refrigerating Co., 236 Mo. 414; State ex rel. v. Higgins, 125 Mo. 368; State ex rel. v. Gordon, 245 Mo. 28; Throop, Public Officers, p. 19, sec. 19. (d) The Legislature can cast an additional duty upon any court when not prohibited by any provision of the Constitution from so doing. State ex rel. v. Higgins, 125 Mo. 368; State v. Hathaway, 115 Mo. 49; People ex rel. v. Provines, 34 Cal. 540; State v. Tolle, 71 Mo. 648.

*J. R. Baker* for respondent.

(1) The act in question violates section 12, article 2, of the Constitution of Missouri. It has been held

by this court in the case of State v. Shartell, 93 Mo.
123, that the information meant by the above quoted
section of the Constitution is meant an information by
a public officer, and that no information other than
the information by a public officer authorized to prose-
cute crime is sufficient to support a prosecution.  So
it would seem then that the act in question, inasmuch
as it authorizes an information to be filed by any res-
ident of the county, violates, these plain provisions of
the Constitution.  (2)  The act violates section 22, ar-
ticle 2, of the Constitution of Missouri.  An examina-
tion of Sec. 5, p. 150, Laws 1913, which prescribes
the mode of procedure, shows that such cases shall be
heard in a summary manner, and that the hearings
may be conducted in the judge's chambers, and that
the decision shall be made by the judge alone.  A read-
ing of this section, and of section 6, shows conclusively
that the right of trial by jury is not contemplated.
Inasmuch as this procedure is the procedure prescribed
when any child under the age of seventeen years is
accused of violating any law of this State, it certainly
is a procedure for enforcement of criminal law.  Being
a procedure for the enforcement of the criminal law,
it is certainly a criminal prosecution.  If it is a crim-
inal prosecution, then it violates this section of the
Constitution, in that it deprives the defendant of a
right to a jury and deprives him of a speedy public
trial.  The cases cited by the relator in his brief to
the effect that a prosecution under a city ordinance is
not a criminal prosecution are not in point.  No au-
thority can be found which holds that a procedure for
the enforcement of a criminal law of this state, what-
ever the grade of crime, is not a criminal prosecution.
(3)  The act violates subdivisions 2 and 15 of section
53 of article 4 of the Constitution of Missouri.  The
respondent does not contend that this act violates the
provision of the Constitution which prohibits special
and class legislation, for the reason that it applies only

to counties with less than 50,000 inhabitants. Respondent does contend, however, that it violates this section, for the reason that this act prescribes different modes of procedure for the several members of one class of citizens. It prescribes one way of punishing violations of the criminal law when committed by children under the age of seventeen years who are not "inmates of any State institution or any institution incorporated under the laws of the State for the care and correction of delinquent children," and either prescribes a different procedure for children who are "inmates of a state institution or institution incorporated under the laws of this State for the care and correction of delinquent children," or prescribes that the latter class can commit any sort of misdemeanor without being amenable to any law. In either case it makes a distinction which makes it special and class legislation. (4) The act violates section 34 of article 6 of the Constitution. Probate courts are not courts of general jurisdiction, but are courts created by the Constitution with jurisdiction only over those matters prescribed by the Constitution. This section of the Constitution confers upon probate courts jurisdiction over guardians and curators of minors. However, it is plain that the jurisdiction attempted to be conferred upon probate courts by the act in question is not conferred by this clause of the Constitution. Section 4 shows that this act contemplates the taking of the child away from its legal guardian. As is well said in relator's brief, "The jurisdiction attempted to be conferred, tends more towards criminal jurisdiction than probate jurisdiction, and the jurisdiction assumed is an exercise of the State's police power." If this be true, then the act is contrary to this section, for it is very plain from a reading of the section that no criminal jurisdiction is conferred on probate courts. (5) The act violates section 35 of article 6 of the Constitution of Missouri. This section of the Constitution provides that probate courts shall

be uniform in their organization, jurisdiction, duties, and practices. (6) The act violates section 31 of article 6 of the Constitution of Missouri. This section of the Constitution provides that the General Assembly shall have no power to establish criminal courts in counties with less than 50,000 inhabitants. Respondent contends that it would be impossible to frame a correct definition of the term "criminal court" without defining it as being a court having all the power, authority, and attributes which are conferred upon the probate courts by this act, and that this act creates a criminal court in counties of less than 50,000 inhabitants in contravention of this section of the Constitution. (7) The case of State v. Loving, 178 Mo. 194, is no authority for upholding the constitutionality of the acts in question.

WALKER, J.—Mandamus to compel the probate court of Callaway county to assume jurisdiction and hear and determine a charge of petit larceny against a boy of the age of twelve years.

The prosecuting attorney of Callaway county filed in the circuit court an information charging a boy of the age of twelve years, with the crime of petit larceny. Upon the case being called in the circuit court for trial, the judge of said court, in accordance with the provisions of section 7, page 152, Laws 1913, ordered the same transferred to the probate court for hearing and determination; the judge of said court refused to docket the case or make any disposition of same. By petition the prosecuting attorney submitted these facts to the circuit court, which issued an alternative writ of mandamus directing the probate judge to assume jurisdiction and docket, hear, and dispose of the charge against said minor, or show cause why he should not comply with such order. The probate judge in his return admitted that he had refused to obey the order of the court, and alleged as a reason

therefor that the act in which said section 7 appears, entitled, ''An Act conferring jurisdiction on probate courts in counties of less than 50,000 inhabitants to provide for the care and control of children under seventeen years of age, who are delinquent,'' etc. (Laws 1913, pp. 148-154) was violative of certain sections of the .Constitution set out in the return, and, therefore, void. The circuit court sustained the contentions of the probate judge, and refused to grant a peremptory writ, from which ruling the prosecuting attorney, complying with the formal procedure in regard thereto, appealed to this court.

The act in question is declaratory of the original and exclusive jurisdiction of probate courts, in counties of less than 50,000 population, over neglected and delinquent children. Jurisdiction once acquired is to continue until the child attains its majority. Within the designated classes are included every offender under seventeen years of age, from the actual criminal to those guilty of evil associations, or improper conduct or conversation. Those excepted from the provisions of the act are children who are inmates of State institutions, or those now in institutions incorporated under the laws of the State, and children charged with offenses punishable by death or imprisonment in the penitentiary.

Regardless of the nature of the offense with which the child may be charged, within the limitations above stated, any reputable person who has knowledge of same, and who is a resident of the county, may file a petition verified by affidavit, with the clerk of the probate court, setting forth the facts in regard to such child, which affidavit may be on information and belief. A summons shall thereupon issue, requiring the child or the person having it in custody, to appear within the next twenty-four hours after service or as directed by the court. The parent or guardian is also to be notified to attend, and upon failure to do so he may be

proceeded against as for contempt. A summary hearing is thereupon had by the court in the absence of counsel, and provision is made in regard to costs. If the child be adjudged neglected or delinquent, the court proceeds to provide for its future care and custody. When a child is arrested, with or without a warrant, it is to be taken before the judge of the probate court, and, while courts and magistrates may issue warrants for children, the subsequent proceedings must be before the probate court. Appeals are authorized to be taken, presumably to the circuit courts, but the act is silent in this regard. County courts are required to provide places of detention for children within the provisions of the act. The probate court is authorized to appoint a probation officer to serve under the direction of the court, and the Board of Charities and Corrections is required to approve of the appointment of probation officers. The powers, duties, etc., of probation officers are defined, and county and municipal officers are required to lend their assistance to further the objects of the act. When a probate court takes a child from its parents, the ability of the latter to support the child may be inquired into, and, if found able, the court may order the parents to support the child or contribute thereto.

Laws in regard to the Girls' Industrial Home and the Boys' Training School are declared not repealed by this act.

The court is empowered to formulate and publish rules and regulate the proceedings necessary to the enforcement of the act, and the county is to pay the expenses of same. Lastly, it is provided that the act is to be liberally construed.

The foregoing presents the principal provisions of the act by the terms of which jurisdiction is conferred on probate courts over neglected and delinquent children in the counties designated; such sections as are necessary to be considered in discussing the va-

lidity of the act will be particularly referred to in the opinion.

I. The legislation exemplified by the act in question may not only be characterized as progressive, but humanitarian as well. In effect, it extends the rule as to an infant's irresponsibility for crime from four-teen to seventeen years of age, except as to of-fenses punishable by death or imprisonment in the penitentiary. While the rule has long prevailed that a child over the age of seven and under fourteen years is prima-facie presumed in-capable of committing crime (State v. Adams, 76 Mo. 355; Martin v. State, 90 Ala. 602, 24 Am. St. Rep. 844; Heilman v. Comm., 84 Ky. 457, 4 Am. St. Rep. 207; Carr v. State, 24 Tex. App. 562, 5 Am. St. 905; State v. Yeargan, 117 N. C. 706; 36 L. R. A. 196) under the administration of the criminal laws of England, within the last century, children have been hanged for what we now regard as trivial offenses. Earlier, under the rigorous enforcement of the law by Coke, Scroggs, Saw-yer, Jeffries, Saunders, *et id omne,* as evidenced by those chronicles of cruelty, the reports of the Court of Kings Bench and others having jurisdiction in crim-inal cases, there were more than two hundred offenses punished capitally, and the law made no distinction be-tween offenders of tender years and the most hard-ened criminals. The far cry, therefore, between the present statutes in regard to juvenile offenders and those records of barbarism, affords ample reason and excuse for contrast and comment by the student of ju-risprudence.

In accord with the general forward movement to-wards a better citizenship, especially evident during the past decade, legislation, usually last to respond to the spirit of progress, manifests a marked change in its attitude towards children; they are no longer re-garded as criminals to be punished without effort at

*Children and Parents.*

reformation and after their detention to continue as menaces to society, but as wards to be aided, encouraged and educated, that they may, in the language of the ledger, become assets instead of liabilities.

Courts, not unmindful of the underlying spirit prompting modern legislation in regard to juvenile offenders, have, wherever it has been possible to do so without violating the cardinal canons of construction, upheld laws of this character. An apt illustration in this regard is to be found in our own reports. In Ex parte Loving, 178 Mo. 194, this court sustained a statute in regard to neglected and delinquent children in counties of 150,000 inhabitants and over—the ruling being confined, however, to the title of the act and that same was not a special or local law. This case may properly be regarded as an authority in support of the conclusion that the act in question is not special legislation. Further, it may be contended that the natural rights of parents in the care, control and education of their children cannot be interfered with by the State; but if it be shown, as it is required to be in the act under consideration, that parents are corrupt, immoral or otherwise incompetent, the State, which has a paramount interest in the proper personnel of its members as citizens, may, where it is found necessary, regulate their conduct in this regard. [Com. v. Fisher, 213 Pa. 48; Ex parte Crouse, 4 Whar. 9.] This power, exercised without abuse, is held to be a legal and just restriction upon personal liberty required on account of the welfare of the community. [Re Ferrier, 103 Ill. 367, 42 Am. Rep. 109; Roth v. House of Refuge, 31 Md. 329; Prescott v. State, 19 Ohio St. 184.] While the right of parental control is a natural, it is not an inalienable right, and even in the absence of a statute the power of courts of equity to place children under guardianship has been exercised from time immemorial. [Home of Friendless v. Berry, 79 Mo. App. 566; Wis. Indus. Schl. v. Clark Co., 103 Wis.

651; Wellesley v. Wellesley, 2 Bligh (N. S.) 124.] In the last case Lord REDESDALE said that the right of a chancellor to exercise this power had not been questioned in one hundred and fifty years.

The conclusion is, therefore, authorized that the State in its character of *parens patriae* may provide for the comfort and promote the well being of not only infants but persons of defective understanding, or so burdened with other misfortunes or infirmities as to be unable to care for themselves. So important is this governmental function that the limitations of the Constitution are to be so construed, if possible, as to not interfere with its legitimate exercise. [Jarrard v. State, 116 Ind. 98; Ex parte Ah Peen, 51 Cal. 280; McLean Co. v. Humphreys, 104 Ill. 378; Re John Sharp, 15 Idaho, 120, 18 L. R. A. (N. S.) 886.]

From the authorities cited and many others of like character, omitted to avoid further encumbering this opinion, these conclusions may be deduced: That acts of the character of the one under discussion, if properly entitled, cannot be classed as special legislation, do not constitute an invasion of personal rights, and are not a denial of due process of law.

II. An equally important question, however, remains for solution in regard to the manner in which the power attempted to be conferred, under the act in question, is to be exercised. No aid is **Constitutional Jurisdiction of Courts.** to be derived from the judicial interpretation of the two earlier acts (now articles 6 and 7, Chap. 35, R. S. 1909) in regard to juvenile courts and offenders, because in each the power of enforcement is lodged in the circuit or criminal courts which have general jurisdiction of offenses (Secs. 1, 22, 31, art. 6, Constitution), while in the act under review probate courts are empowered to enforce it. The first section of the act providing that: "In all counties of less than 50,000 population, the

probate court or judge thereof in vacation shall have
original and exclusive jurisdiction of all cases coming
within the provisions of this act.'' [Laws 1913, p. 149.]
The effect of the act is to transfer the jurisdiction of
offenses committed by minors under seventeen years
of age, other than those punishable by death or im-
prisonment in the penitentiary, from the circuit and
criminal courts to the probate courts. In view of the
fact that the general jurisdiction of the latter courts
is fully and completely defined by the Constitution and
the purpose of their creation is foreign to the enforce-
ment of the criminal law, the question may well arise
as to whether the attempted extension of their juris-
diction is authorized, the general rule being that where
a court is established and its jurisdiction is specifically
defined by the organic law, the Legislature is power-
less to diminish, enlarge, transfer or otherwise in-
fringe upon the powers thus conferred. For example,
it is held by the Supreme Court of Michigan (Allen v.
Cir. Judge, 37 Mich. 474) that where jurisdiction is
conferred on certain courts by the Constitution, they
are beyond the reach of legislation; and in New Jer-
sey the Court of Errors and Appeals holds (Flanigan
v. Smelting Co., 63 N. J. L. 647) that where the Con-
stitution (Sec. 1, Art. 7, Con. N. J.) guarantees the
integrity of certain courts of which the Supreme Court
is one, whatever power this court had or jurisdiction it
exercised at the date of the adoption of the Constitu-
tion, was by such adoption incorporated into the or-
ganic law and thereby insured against destruction or
abridgement except through a change in the Constitu-
tion itself; that to abolish the court or alter its or-
ganic character is beyond legislative power.

In North Carolina (Malloy v. Fayetteville, 122
N. C. 480; Rhyne v. Lipscombe, 122 N. C. 650), it is
held that while the General Assembly may allot and
distribute such power among the courts as does not
pertain to the Supreme Court, it has no power to de-

prive the judicial department of any jurisdiction conferred by the Constitution. [See also 11 Cyc. 706, where the general rule is announced and cases cited.]

The Supreme Court of Florida (Ex parte Cox, 44 Fla. 537), in discussing the right of that court to review by writ of error a judgment in a *habeas corpus* proceeding, said: "The Constitution of this State in organizing the judiciary thereof has assigned to each court created thereby certain jurisdiction therein designated, and has provided that the Legislature may give to certain of these courts additional jurisdiction. Where no such provision is made in the Constitution, the Legislature cannot confer upon one of these courts jurisdiction."

The following recent cases from our own reports contain rulings illustrative of the limitations placed by the Constitution upon legislation: In Redmond v. Railroad, 225 Mo. 721, 731, it is held that the General Assembly has no authority to enact a statute (as is attempted in Laws 1903, p. 200) providing that "the probate court shall have no jurisdiction to inquire into the insanity of any person who is the owner of no property," for the reason that the Constitution vests the probate court with general power to appoint guardians for insane persons; and that where such general power is conferred, the General Assembly is not authorized to prescribe the manner in which it is to be exercised.

In State v. St. L., I. M. & S. Ry. Co., 253 Mo. 642 in which a statute was construed providing that certain penalties imposed on railroad corporations should be paid into the good roads fund instead of the county school fund, it was held that such act was invalid as being in contravention of that provision of the Constitution which provides that all penalties shall belong to the county school fund. BOND, J., speaking for the court in this case, says: " 'The clear proceeds of all penalties and forfeitures shall belong to the county

public school fund. [Constitution, art. 11, sec. 8.] Unquestionably the attempted diversion of any such penalties or forfeitures by the Legislature would nullify the act if it was passed for that sole purpose, for the Constitution having spoken as to the proper receptacle of such funds, the power of the Legislature to speak in a contrary way is stilled and ceases to exist until the constitutional provision shall be amended or abrogated. It is evident that so much of the penalty clause of the act under review as purports to create a penalty payable to the good roads fund is void.''

In Board of Com'rs v. Peter, 253 Mo. 520, in construing an act of the General Assembly (Laws 1911, p. 130, Sec. 8, amended by Laws 1913, pp. 143 et seq.) providing for the establishment of public tuberculosis hospital districts in certain counties, this court, speaking through LAMM, C. J., held that the taxing power of the General Assembly was limited under section 1, article 10, of the State Constitution to state, county and municipal purposes; that a hospital district could not be held to be a municipal corporation, and hence the Legislature was not here authorized in attempting to confer taxing power on same. The rate of taxation provided for by the act was found to exceed the constitutional limit, and the act was also held invalid on this account.

These cases, while aptly illustrative of the application of the general rule in regard to the limitations placed by the Constitution upon legislation, do not, except in the Redmond case, supra, have particular references to the jurisdiction of courts as defined by the organic law. The rule, however, was by clear implication approved in Vail v. Dinning, 44 Mo. 210, construing an act of the Legislature which authorized a contestor for the office of circuit judge to institute an original proceeding in the Supreme Court to determine the issue. WAGNER, J., speaking for the court, said:

"In the first place, . . . the jurisdiction of this court is defined and limited by the Constitution. It has such powers and jurisdiction as the Constitution has conferred upon it—no more, no less. It cannot shirk any duty imposed on it by the organic law, nor can it extend its powers to take cognizance of any matter not within the scope of its limited authority. The Legislature can neither add to nor diminish its rightful jurisdiction. That body can invest it with no original jurisdiction when it is not given by the Constitution, nor can they deprive it of its appellate jurisdiction." The doctrine here announced was approved in State ex rel. v. Flentge, 49 Mo. 488, in which the court held that the Legislature was not authorized to enact a law subjecting clerks of courts to trial in the Supreme Court for misdemeanors in office. By parity of reasoning it would seem that this rule should apply with equal force to any other constitutional court whose powers are therein definitely defined, as is the case in regard to probate courts. [Sec. 34, art. 6, Constitution.]

It may be contended, however, that as the Constitution in defining the jurisdiction of probate courts, uses no words of restriction, the Legislature is authorized in conferring upon such courts or the judges thereof other duties, powers and functions. Notwithstanding the approval of the general rule elsewhere in regard to the jurisdiction of constitutional courts, and its implied approval here, our Legislature has, in several instances, before and since the adoption of the present Constitution, in evident recognition of the rule in regard to the absence of words of restriction, added to the powers of probate courts, and the Supreme Court has, in some instances, put the seal of its approval upon such enactments. Illustrations of these added powers are to be found in the statute (Sec. 2442, R. S. 1909) which prescribes that applications for writs of *habeas corpus* may be directed to "some court of rec-

ord or to any judge thereof in vacation," this court holding in State v. Millsaps, 69 Mo. 359, that a probate judge, under this statute, may issue the writ and admit to bail. The authority to grant writs of injunction, under certain conditions, is also conferred by the Legislature on probate courts or judges thereof in vacation (Secs. 2512, 2513, Revised Statutes 1909); and the judges of such courts are declared to be conservators of the peace, with power to let to bail persons indicted for bailable offenses (Sec. 4061, Revised Statutes 1909; State v. McElhaney, 20 Mo. App. 584); and probate judges are authorized in the absence of county judges to hold county courts [Sec. 4062, Revised Statutes 1909].

Despite the constitutional provision, therefore, in regard to jurisdiction and the evident purpose in view in the establishment of probate courts, it is no longer an open question here as to the right of the Legislature to add to the powers of such courts.

However, if this right be conceded, the powers conferred must apply alike to all of the probate courts in the State, otherwise the statute conferring the powers will contravene that provision of the Constitution (Sec. 35, Art. 6) which requires that probate courts shall be uniform in their organization, jurisdiction, duties and practices.

Probate Courts: Uniform Powers.

Under this act it will scarcely be contended that probate courts, clothed with the power to hear and determine offenses against neglected and delinquent children, are uniform in any of the constitutional requirements with those not possessing this power.

III. Further considering the power conferred by the act in question upon probate courts and the manner in which the same is to be exercised, we find that a "delinquent child" is defined, among other things, to be one which "violates any law of this State." This defini-

Juvenile Courts: Conformity to Criminal Procedure.

tion includes, under the exceptions heretofore noted, any child which may violate any law not punishable by death or imprisonment in the penitentiary (Sec. 2, Laws 1913, p. 149), or in other words, this definition includes any felony or misdemeanor of which a child may be guilty save those expressly excepted.

The manner of procedure prescribed by the act is as follows: "Any reputable person, being a resident of the county, having knowledge or information of a child, who appears to be a neglected or delinquent child, may file with the clerk of the probate court a petition, in writing, setting forth the facts, verified by affidavit. It shall be sufficient that the affidavit be on information and belief." [Sec. 3, Laws 1913, p. 150.] Upon the filing of this petition a summons is issued, etc., and the subsequent proceedings are much akin to those authorizing the appointment of guardians for minors. [Secs. 4, 5, and 6, Laws 1913, pp. 150 and 151.]

While this act extends the prima-facie rule of an infant's non-liability for crime to seventeen years, it could not, without revolutionizing the entire system of the criminal law, nor, in fact, does it attempt, by its terms, to change the class or character of offenses designated in the Constitution and the statutes as felonies and misdemeanors.

These classes or character of offenses not being changed, the same procedure must be observed in their prosecution whether the offender be an adult or an infant, and that provision of the Bill of Rights which prescribes that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information," etc., must be complied with. [Sec. 12, art. 2, Constitution.]

It does not help matters here that the prosecuting attorney did proceed by information against the offender, because there is nothing in the act to authorize this course of procedure.

It is, in our opinion, begging the question to assert that the same rules of construction should not be applied to this act where it refers to "violations of laws of the State" as is applied to the Constitution and other statutes having a like reference. It is true, the purpose of the act is salutary and every effort should be made to sustain it, but where it seeks to include, as it does, the entire category of crimes within its purview, save as to the exceptions noted, and attempts to engraft upon our procedure powers foreign to the Constitution and the laws passed in conformity therewith in regard to crimes, it should not receive judicial sanction.

An indictment or information being necessary to a prosecution for a violation of the laws of the State, it must be such as is meant by the common law, viz.: in the one instance be found and presented by a grand jury, and in the other be instituted by a public officer authorized to prosecute crimes. [State v. Kyle, 166 Mo. 287; State v. Hicks, 178 Mo. 433; State ex rel. v. Bland, 189 Mo. l. c. 208; State v. Minor, 193 Mo. l. c. 605.] Failing to require these necessary prerequisites in the exercise of jurisdiction over offenders, the act cannot be sustained. Furthermore, the power conferred on the court to hear in a summary manner and to conduct the examination of witnesses without the assistance of counsel, or, as is evident from the entire purport of the act, to conduct the hearing in an ex parte manner, is contrary not only to the letter but to the spirit of the Constitution (Sec. 22, Art. 2, Constitution) which provides that "in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy, public trial by an impartial jury of the county."

IV. In the two earlier acts (Arts. 6 and 7, Chap. 35, R. S. 1909) in regard to neglected and delinquent children in certain counties, it is expressly provided that the practice and procedure prescribed by law for the conduct of criminal cases, so far as the same may be applicable, and when not otherwise provided therein, shall govern all proceedings under said articles; and in all trials under same any person interested therein may demand a trial by jury. [Parts of Secs. 4099 and 4124, Revised Statutes 1909.]

*Former Juvenile Acts.*

Rejecting, therefore, such portions of said statutes as are obnoxious to the Constitution, enough remains to render a proceeding under either valid. The record in the Loving case, supra, discloses that the proceeding therein was based upon an information filed by a prosecuting attorney, and that the other provisions of the act, there under review, in regard to summons, summary hearing, trial without a jury, etc., were disregarded. While these acts have been repealed, the statute enacted in lieu thereof (Laws 1911, p. 177) contains a like provision in regard to the right to a trial by jury.

The act in question, however, contains no such plenary provisions, and being in contravention with the organic law it must be declared invalid.

The presence of a 'prentice hand is evident in the framework of this act. Given a laudable purpose, the Legislature, looking only to results, proceeds to enact a substantive law embodying a system of procedure applicable to certain counties, for the hearing and determination of cases against infant offenders. While such legislation should be sustained and encouraged, it cannot be when it is, as in this case, in conflict with the organic law and as a consequence out of accord with our entire system of criminal jurisprudence.

From the foregoing it follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.