CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1914.

(*Continued from Volume 264.*)

THE STATE v. GEORGE B. WILSON, Appellant.

In Banc, April 2, 1915.

1. BAIL BOND: Appellate Jurisdiction. The Supreme Court has jurisdiction of an appeal from a judgment of a circuit court rendered upon a writ of *scire facias* upon a forfeited bail bond, in a felony case, in total disregard of the amount of the bond. *Held*, by GRAVES, J., dissenting, with whom BROWN and BOND, JJ., concur, that a suit on a forfeited bail bond is a civil action, and being such the Supreme Court does not have jurisdiction of an appeal by the surety from a judgment for $1500 rendered by the circuit court, but appellate jurisdiction is in the proper Court of Appeals.

2. ————: Difference from Recognizance. A recognizance is in all cases a contract acknowledged by the parties and entered or filed in the records of the court; a bail bond is an obligation given by the accused and one or more sureties conditioned that the same will be void upon the performance by the accused of such acts as he is by it required to perform. And while in the main like rules are applicable to both, yet if this distinction is kept in mind much of the confusion arising from the loose language employed in the statutes and some decisions will dis-

265 Mo.] (1)

State v. Wilson.

appear. The statutes contemplate that either a bail bond or a recognizance may be taken, but from the nature of the obligation more strictness must be exercised in taking a recognizance than in taking a bail bond.

3. **PROBATE COURTS: Limited Jurisdiction.** The Constitution of 1875 did not create probate courts, but simply emphasized their fundamental character, and provided that they should be uniform in organization, jurisdiction, duties and practice, and did not restrict their powers to matters pertaining to probate business, and did not so inhibit the Legislature from extending or enlarging their jurisdiction to include other matters, if the nature and character of the court is not thereby changed.

4. **COURTS: Constitutional Jurisdiction: Legislative Extension.** The constitutional limitations of State courts may be extended by the Legislature unless by the Constitution expressly inhibited. State constitutions are but limitations upon legislative power, which is not limited except by express prohibitions or necessary implication; and none of the courts whose fundamental character is defined by the Constitution of 1875 is by its express terms placed beyond legislative control, except that the Legislature cannot change the character or the fundamental nature of the court.

5. **HABEAS CORPUS: Bail Bonds: Probate Courts.** The probate courts of this State have power to issue writs of *habeas corpus*, and admit the accused to bail, and to accept a bail bond binding him to appear before the circuit court to answer an information preferred by the prosecuting attorney charging him with a felony.

6. **BAIL BOND: Execution: Signature in Presence of Officer.** A bail bond is not invalid as to the surety for the simple reason that it was not signed by the surety in the presence of the probate judge taking it. The distinction made by the statutes between recognizances and bail bonds must be regarded in such matters. Where the accused, charged by information with a felony, was brought before the probate judge on *habeas corpus* and the appellant expressed a willingness to sign the bond of the accused, and submitted to the judge satisfactory proof of his qualifications as a surety, in the form of sworn statements as to the nature and value of his property, and the bond was later signed by the surety out of the presence of the judge, and later by the accused in the judge's presence, the bond as to the surety is not invalid because not signed by him in the judge's presence. [Distinguishing State v. Randolph, 22 Mo. 474; and overruling State v. Pratt, 148 Mo. 402, and also State v. Owen, 206 Mo. 573, in so far as it conflicts with this holding.]

7. ———: **Surety: Qualifications: Personal Examination.** Section 5127, Revised Statutes 1909, does not require a personal

examination of a surety of a bail bond as to the amount and value of his property; his qualifications may be determined from a sworn statement voluntarily filed by him.

8. ————: ————: ————: ————: **Non-Action Raised by Surety.** The statute in reference to the qualification of a surety on a bail bond was not intended to be interposed as a shield behind which the surety can hide himself to prevent a payment of the obligation voluntarily entered into by him, but was intended for the protection of the public in providing a method by which the court or officer taking the obligation would be enabled to ascertain whether the persons offering themselves as sureties possess such property as the law requires. An absolutely technical compliance with the statute in the details of qualifying the surety is not required, where there is a substantial compliance therewith.

9. **BAIL BOND AND RECOGNIZANCE: Execution: Difference.** A recognizance is entered into in open court, must be made a matter of record, need not be signed by the principal or surety, and is an acknowledgment upon the record of a debt already due; a bail bond is a contract, signed by accused and one or more sureties, under a penalty, and its execution, delivery and approval give it its binding effect, and there is nothing in its nature or terms which requires that it should be signed in the presence of the court or officer taking it. The Legislature has not obliterated the distinctions between the two classes of obligations, nor intended that the requisites necessary to the validity of the one should be indiscriminately applied to the other. The statute does not require a surety to sign a bail bond in the presence of the court or officer taking it, and its validity is not affected by the fact that the surety signed it elsewhere.

10. **BAIL BOND: Entered of Record.** The validity of a bail bond is not affected by the fact that it was not spread upon the records of the court. Section 5125, Revised Statutes 1909, applies to recognizances, and not to bail bonds.

11. ————: ————: **In Cases Other Than Habeas Corpus.** In the absence from the county of the judge of the circuit court in which the criminal case is pending, the judge of the probate court is authorized to let any party indicted for a bailable offense to bail, regardless of whether a writ of *habeas corpus* has been issued. And, hence, the statute (Sec. 5125, R. S. 1909) requiring recognizances taken during term time of the probate court to be entered of record, does not apply to a bail bond approved by its judge.

Appeal from Worth Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*DuBois & Miller* and *John Ewing* for appellant.

(1) The court should have sustained defendant's demurrer to the *scire facias*. It is contradictory and fails to show any liability of the defendant Wilson. It alleges, first, the bond was taken before D. C. Mull, probate judge, November 16, 1911; also alleges that "said bond was duly signed by said O. K. Hanson and G. B. Wilson and acknowledged in the presence of said probate court," a declaration on both a bail bond taken in vacation and a recognizance taken and acknowledged in open court. The counsel for the State attempted to cure a void bail bond by alleging the same was taken and acknowledged by the probate court in term time. They could not legally declare upon both the bail bond and a recognizance taken in term and should have been required to declare upon one or the other, and not both. (2) When the evidence was all in, it was insufficient to support a judgment, either upon a bail bond or a recognizance. Where no evidence is introduced tending to prove the cause of action set up in the petition, a demurrer to the evidence should be sustained. Holmes v. Leadbetter, 95 Mo. App. 419; Butts v. Bank, 99 Mo. App. 172; Hyde v. Railroad, 110 Mo. 280; Milliken v. Commission Co., 202 Mo. 655. It is a well-established rule of pleading that a party cannot state one cause of action and recover on a different one; he must stand upon the case made by the pleadings. Weil v. Posten, 77 Mo. 287; Leslie v. Railroad, 88 Mo. 54; Reed v. Bott, 100 Mo. 66. (3) To assert that the probate courts of Missouri are without jurisdiction to issue writs of *habeas corpus* and let to bail prisoners held upon a criminal charge, may seem to be flying in the face of previous decisions of this court. State v. Millsap, 69 Mo. 559; State v. Tincher, 166 S. W. 1028. But in view of the fact that the Millsap case was bottomed on a special law under the Constitution of 1865, and in the Tincher case

the question was only incidentally raised, we feel the question is not *stare decisis;* and we beg this honorable court to carefully examine the authorities cited and reconsider this question. Probate courts of this State, since the adoption of the Constitution of 1875, are creatures of the organic law. Their powers and jurisdiction are defined and limited by the Constitution and laws of the State. Constitution, art 6, secs. 1, 6; Laws 1877, p. 229, secs. 1 and 2; R. S. 1909, secs. 4055, 4056. By the Constitution and statute, probate courts are made courts of record and their powers and jurisdiction are especially defined and circumscribed. In re Elliot's Estate v. Wilson, 27 Mo. App. 218. In cases where the question of jurisdiction of inferior courts has been discussed by this court it has pronounced their acts void, where they overstep their powers. Schell v. Leland, 45 Mo. 294; Jefferson County v. Cowan, 54 Mo. 237; Johnson v. Beazley, 65 Mo. 250. The law, relating to criminal procedure, does not even by implication, give authority to probate courts to take bail of persons held in custody, or under arrest; only the judge of the court in which the information is pending has such authority, or if the judge is not in the county it is the duty of the clerk to take the bond. R. S. 1909, sec. 5123. The Legislature ever since the adoption of the Constitution of 1875 has attempted in one or two instances to enlarge the jurisdiction of probate courts beyond the limits prescribed by the Constitution, but any act of the Legislature attempting to add to their powers not necessarily included within the scope of the organic law would be void. Vale v. Dinning, 44 Mo. 212; State v. Flentge, 49 Mo. 490; 11 Cyc. 706; State v. McElhaney, 20 Mo. App. 584; State v. Watson, 54 Mo. App. 416. (4) The law relating to *habeas corpus* giving the court or magistrate, before whom the prisoner shall be brought, the right to take bail and discharge the prisoner (Sec. 2478, R. S. 1909), will be construed together with Sec. 5127,

R. S. 1909, relating to recognizances in criminal cases. And when so construed there can be but one conclusion, that is, there was no recognizance or bond of the defendant Wilson, taken, entered into, or acknowledged in open court, and there was none taken and acknowledged out of court, and without which the circuit court had no power or jurisdiction to enter judgment or forfeiture, or to proceed thereon to final judgment against the security, the defendant Wilson. State v. Pratt, 148 Mo. 402; State v. Randolph, 26 Mo. 213; Commonwealth v. Hickey, 33 Atl. 188; State v. Owen, 206 Mo. 573.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State; *James Anderson* and *Leo M. Phipps* of counsel.

(1) The probate court, or the probate judge, of Worth county, had authority to issue the writ of *habeas corpus,* take the bond and admit Hanson, the prisoner, to bail. Ex parte Berger, 193 Mo. 25; Ex parte Roberts, 166 Mo. 212; State v. Millsap, 69 Mo. 539; State v. Watson, 54 Mo. App. 416; State v. McElhaney, 20 Mo. App. 584; Sec. 2442, R. S. 1909 (Sec 2618, R. S. 1879); Sec. 4061, R. S. 1909 (Sec. 1181, R. S. 1879); Sec. 4062, R. S. 1909 (Laws 1897, p. 76); Sec. 2512, R. S. 1909 (Sec. 5488, R. S. 1889); Sec. 2513, R. S. 1909 (Sec. 5489, R. S. 1889). (2) Our statutes authorize the taking of either a bond or a recognizance for the appearance of the accused in criminal cases. Sec. 5123, R. S. 1909; Sec. 4123, R. S. 1889; Laws 1881, p. 118; Sec. 1829, R. S. 1879; Secs. 5135, 5136, R. S. 1909; Laws 1883, p. 82. There is a wide distinction between a recognizance and a bond. A recognizance is an obligation of record entered into before a court of record or officer with condition to do some particular act. It is an acknowledgment of a debt of record, and is in the nature of a conditional judgment of record. State v. Watson, 54 Mo. App. 417; 2 Blackstone's Com-

mentaries, 341; Bouvier's Law Dictionary; Clark's Crim. Proc., pp. 84, 91, 93; 3 Am. & Eng. Ency. Law (2 Ed.), pp. 686-687; Lang v. People, 14 Mich. 442; Gay v. State, 7 Kan. 402; Heyward v. U. S., 37 Fed. 764; 34 Cyc. 538; People v. Barrett, 202 Ill. 287; State v. Dorr, 59 W. Va. 192. An appearance bond is a contract under seal just like any ordinary bond, conditioned that the accused shall appear as therein provided. Clark's Crim. Proced., pp. 84, 91, 93; 3 Am. & Eng. Ency. Law (2 Ed.), p. 687; Cole v. Warner, 93 Tenn. 155; Swan v. United States, 3 Wyo. 151. Where a bond or other written obligation, signed by the parties, conditioned for the appearance of accused is taken, it is not necessary that it be acknowledged, and it need not be signed in the presence of the officer whose duty it is to take same. Kansas City v. Fagan, 4 Kan. App. 796; People v. Hurlburt, 44 Barb. (N. Y.) 126; State v. Wells, 36 Iowa, 238; State v. Peyton, 32 Mo. App. 522. (3) It was not necessary to the validity of the bond in question, that it should be spread upon the records of the probate court of Worth county. Secs. 5019, 5129, R. S. 1909. (4) There is no variance between the allegations in the *scire facias* and the proof in this case. State v. McElheney, 20 Mo. App. 584; State v. Abel, 170 Mo. 59.

WALKER, J.—This is a suit against a surety, George B. Wilson, on a forfeited bail bond given for the appearance of one O. K. Hanson to answer a charge of bigamy instituted in the circuit court of Worth county. The plaintiff had a judgment in the trial court against the surety in the sum of $1500, the amount of the bond, and the latter appeals to this court.

In August, 1911, O. K. Hanson, charged as stated, was committed to jail in default of bail. In October, 1911, on the application of the accused, the court fixed the amount of his bail at $1500. In November, 1911, in the absence from the county of the circuit judge, the de-

fendant applied to the probate judge of Worth county for a writ of *habeas corpus* for a release from custody upon his giving the required bond. The accused was brought before the probate judge in obedience to the writ, and the surety, Wilson, the appellant here, expressed to the judge his willingness to sign the bond of the accused. Satisfactory proof as to the qualifications of the surety was submitted by him to the judge in the form of a sworn statement as to the nature and value of the surety's property over and above all liabilities. The bond for $1500 for the appearance of the accused was thereupon signed by him in the presence of the judge, and the same having theretofore been signed by Wilson as surety, it was approved and the accused was released. Thereafter the bond, with the approval of the probate judge endorsed thereon, was by him filed in the office of the clerk of the circuit court where the information against the accused was pending. He failed to appear in answer to the charge preferred against him as required by the bond, and after the usual procedure a forfeiture was taken thereon. Later a *scire facias* was issued, as authorized by section 5135, Revised Statutes 1909, and served upon the surety, George B. Wilson, followed by a hearing and a judgment as stated.

The signing of the bond by the principal in the presence of the probate judge and by the surety before the release of the former and the delivery of the bond to the probate judge, are admitted; but it is sought by the surety to evade liability under the following alleged defenses: (1) That the probate judge, as such, had no authority to admit the accused to bail upon a writ of *habeas corpus;* (2) that the surety is not bound, because he did not sign the bond in the presence of the probate judge, although admittedly signed with a full knowledge of the contents and purpose of the bond and before the release of the accused under the *habeas corpus* proceedings; (3) that the bond is void

in not having been spread upon the records of the probate court.

The bond, with the endorsements thereon, is as follows:

> Know All Men by These Presents That we, O. K. Hanson as principal and Geo. B. Wilson as security, are jointly and severally held and bound to the State of Missouri in the sum of fifteen hundred dollars each, for the payment of which well and truly to be made we bind ourselves, our heirs, administrators and assigns, firmly by these presents.
>
> Signed and sealed this 16th day of November, 1911.
>
> The condition of the above bond is as follows, to-wit: If the above bounden O. K. Hanson shall appear in proper person before the circuit court within and for the county of Worth in the State aforesaid, at the courthouse in the city of Grant City, on Thursday, the 23d day of November, 1911, and then and there before the judge of said court answer to an information preferred against him by James Anderson, prosecuting attorney within and for Worth county, Missouri, wherein he is charged with the crime of bigamy, and whereof he stands charged; and if he shall in proper person appear on said 23d day of November, 1911, before said court, and shall not depart thence without leave of said court, then the above bond shall be null and void; otherwise, to remain in full force and virtue in law.
>
> O. K. HANSON,     (Seal.)<br>GEO. B. WILSON,     (Seal.)
>
> Approved by me this 16th day of November, 1911.
>
> (Seal.)          D. C. MULL,<br>Judge of the Probate Court<br>of Worth County, Missouri.
>
> Filed November 16, 1911.
>
> D. C. MULL,<br>Judge of Probate.
>
> Filed in office of circuit clerk November 21, 1911.
>
> CECIL V. WIMAN,<br>Clerk.
>
> By JESSE BENSON,<br>Deputy.

I. *Jurisdiction Generally.*—Preliminary to a consideration of the errors assigned by the appellant it is appropriate that some consideration be given to the question as to the jurisdiction of this court in cases of this character.

For more than half a century, commencing with State v. Randolph, 22 Mo. 474, in a long and unbroken

line of cases down to and including State v. Grant, 252 Mo. 602, and State v. Holt, 234 Mo. 598, it has been expressly or impliedly held that *scire facias* proceedings, as is the instant case, are continuances of existing actions, and if the original action was a felony that this court has jurisdiction. Time and space need not be taken in restating the reasons to sustain this ruling which are learnedly and elaborately set forth in the Randolph case, supra, written by Judge LEONARD. Other cases affirming the ruling announced in State v. Randolph, supra, are: State v. Heed, 62 Mo. l. c. 560; State v. Hoeffner, 124 Mo. l. c. 490; State v. Murmann, 124 Mo. 502; State v. Hoeffner, 137 Mo. 614; Id. v. Id., 137 Mo. l. c. 616; State v. Epstein, 186 Mo. l. c. 98; Id. v. Id., 186 Mo. 102.

A contrary ruling would in each *scire facias* proceeding upon a bail bond necessitate a transfer of the case, if the original action was pending in a criminal court, to a civil court for final determination, which has never been the practice in this State, the power to issue the writ of *scire facias* being uniformly held to be lodged in and executed by the court in which the recognizance or bail bond has been taken. This procedure is recognized, in the absence of express rulings, by a large number of cases in which the criminal courts in this State have exercised jurisdiction in *scire facias* proceedings; it is expressly approved in State v. Caldwell, 124 Mo. l. c. 513, and cases there cited.

A reason by analogy for the correctness of this rule is to be found in the uniform practice prevailing in this State in regard to the issuance of writs to revive judgments, in which it is held that the proceedings are not original, but arise out of and are dependent upon the original actions. [Humphreys v. Lundy, 37 Mo. 320; Sutton v. Cole, 155 Mo. 206; Trimble v. Elkin, 88 Mo. App. 229.]

In some of the cases in this court in reference to recognizances and bail bonds, notably State v. Pratt,

148 Mo. 402, and State v. Owen, 206 Mo. 573, a vagueness in the rulings appears on account of the distinctions between these two classes of obligations not having been clearly recognized and defined. This has been due somewhat to the rather loose phraseology of our statutes, which, however, if carefully interpreted in the light of the distinctive differences between the two classes of obligations, affords no ground for a confusion in the rulings in regard thereto. While in the main like rules of law are applicable to both of these classes of obligations, the primary distinction must be observed that a recognizance is in all cases a contract acknowledged by the parties and entered or filed in the records of the court, while a bail bond is an obligation given by the accused with one or more sureties conditioned that the same may be void upon the performance by the accused of such acts as he may therein be required to perform. While, therefore, the Legislature in using the terms ''bail bond'' or ''recognizance'' intended that either form of obligation might be taken, it is evident from the very nature of the obligations that more strictness is necessary to be exercised in the taking of a recognizance than a bail bond—of this, however, more at length later.

II. *Habeas Corpus—Jurisdiction, Probate Court.* —It is contended by the appellant that probate courts, being of constitutional origin, are limited to the terms of the instrument creating them, and as this only prescribes their power in regard to matters pertaining to probate business (Sec. 34, Art. 6, Con. Mo.), that the Legislature cannot add to or enlarge this jurisdiction. In construing this constitutional provision it must be borne in mind that it did not create probate courts (State ex rel. v. Gammon, 73 Mo. l. c. 426), which had existed before, but simply in express terms emphasized their fundamental character, and provided in addition (Sec. 35, art. 6, Con. Mo.) that they should be uniform

in organization, jurisdiction, duties and practice. To one familiar with our jurisprudence the wisdom and necessity of this provision is evident, as prior to the adoption of the Constitution of 1875 containing the provisions referred to, which did not appear in the Constitution of 1865, probate courts had been created by special enactments, with powers almost as variant as the number of the courts thus created.

The Constitution of 1875, while it defined the fundamental powers of probate courts and prescribed that their organization, jurisdiction, duties and powers should be uniform, did not attempt in any manner to limit the power of the Legislature to extend their jurisdiction. This being true, the well established rule in regard to the jurisdiction conferred upon courts by constitutions may properly be invoked, that such jurisdiction is not exclusive unless made so by express terms or by clear, strong and convincing implication, and, while jurisdiction thus conferred cannot be taken away by the Legislature, it may be added to or enlarged if the nature or character of the court is not thereby changed. Under the exercise of this rule the Legislature may confer power on a court not theretofore possessed by it which will either add to its jurisdiction alone in regard to this matter, or, if like power is already possessed by another court, will render their jurisdictions concurrent. Any other construction of the Constitution, in the absence of terms of exclusion, would render the jurisdiction it confers upon the courts therein named absolutely stationary. There is nothing in our organic law to indicate that its framers contemplated such a purpose in regard to any court the character of which is therein defined.

That such was not the purpose in regard to the right of probate courts to issue the writ of *habeas corpus* is evident from the fact that this power was possessed by these courts, although their jurisdiction

may have been variant in other respects, long before
the adoption of the Constitution of 1875, as an examina-
tion of the *habeas corpus* act as revised in 1855 will
disclose (Sec. 2, art. 1, chap. 73, p. 833, 1 R. S. 1855);
this act provided that the "application for such writ
shall be made . . . . to some court of record in term,
or to any judge or justice thereof in vacation." This,
in all its essential features, is the same as the present
statute. [Sec. 2442, R. S. 1909.] If it had been the
intention of the framers of the Constitution of 1875,
in addition to prescribing the fundamental powers of
probate courts, to curtail the general jurisdiction then
possessed by them, it would, under any reasonable rule
of interpretation, have been done by express terms and
not left to remote implication. The elementary prin-
ciple in regard to the nature of State constitutions must
not be lost sight of. While they express the sovereign
will of the people, they only express it so far as that
will is clearly indicated by the terms of the Constitution
itself or by an implication so clear, strong and convinc-
ing as to admit of no question as to its existence.
[Harris v. Bond Co., 244 Mo. 664; McGrew v. Railroad,
230 Mo. 496.] In other words, they are but limita-
tions on power, and so being, every intendment must be
made in favor of the power of the Legislature (State
ex rel. v. Clayton, 226 Mo. 292; State ex rel. v. Gordon,
231 Mo. 1. c. 572); and if it be held that the provision
of the organic law in regard to probate courts is a com-
mand to the Legislature to create them, it is not a denial
of the authority of the Legislature either to recognize
and continue the powers then existing in such courts
other than those prescribed in the Constitution or to
add to such powers, provided the fundamental nature
of the courts is not changed (McGrew case, supra).

None of the courts the fundamental character of
which is defined by the Constitution are by its express
terms placed beyond legislative control. This evident-
ly was not the purpose of their recognition by the Con-

stitution.   Chief Justice Beasley, of the New Jersey
Court of Errors and Appeals, in Harris v. Vander-
veer's Executor, 21 N. J. Eq. 1. c. 429, in discussing
this identical question as to the constitutional limitation
of the jurisdiction of courts, says that "there is per-
haps no constitutional court in this country, the sphere
of whose operation is entirely beyond legislative ex-
tension."   This statement is limited by the exception
that the principle announced does not apply to Federal
courts on account of the restricted nature of the scope
of Federal legislation, but that it does apply to State
constitutional courts there seems to be no difference of
opinion.

In view of all of which we are of the opinion that
the probate courts of this State are authorized to is-
sue writs of *habeas corpus* as provided by statute.

III.   *Execution of Bail Bond.*—Appellant con-
tends, among other things, that the bail bond is void
because same was not signed by him as a surety in the
presence of the probate judge.   This contention is se-
riously made, despite the admitted facts that the ac-
cused signed the bond as principal in the presence of
the judge and, while the surety affixed his signature
elsewhere, he had expressly declared his intention and
purpose to the judge of signing the bond and had sub-
mitted to the latter his sworn statement of his qualifica-
tions as surety.   The judge, being familiar with and
having identified the signature of the surety, approved
the bond.

Appellant's contention as to the invalidity of the
bond, and his consequent non-liability as a surety there-
on, is based upon a construction of the statutes, which
he alleges is sustained by the rulings of this court in
the Pratt and Owen cases, supra.

It is not necessary in discussing appellant's con-
tention to more than refer to the case of State v. Ran-
dolph, 22 Mo. 474, for we find that the ruling therein

was made under a statute having by its express terms reference to recognizances alone and not bail bonds (Sec. 17, p. 565, R. S. 1845).

In the Pratt case, supra, the reasoning and rule deduced therefrom are clearly applicable to recognizances, but the facts show that the obligation under review was in reality a bail bond. The vice in the rule announced as applicable to the Pratt case, that the bond should have been signed in the presence of the officer taking same, was due to a failure of the court to note the distinctive differences between the two classes of obligations. This fact is emphasized by the court's citation of an authority, and it is the only one cited (Comm. v. Hickey, 172 Pa. St. 39) which declares, that, not a bail bond, but a recognizance must be signed in the presence of the officer taking the same. The inapplicability of the rule to the facts in the Pratt case is rendered further apparent when it is disclosed that the Hickey case, supra, is simply an interpretation of a Pennsylvania statute (Purdon's Dig., p. 1023) under which only recognizances, and not bail bonds, are authorized. Not only is this shown to be true by the statute itself, but the language of the court attests it in declaring, in effect, that "it is unable to determine whether or not a recognizance had been given, because the magistrate's docket was not offered in evidence." The offering of the magistrate's docket in evidence, if the obligation were a recognizance, would have afforded the court the information desired, because one of the requisites to the validity of a recognizance is that it be spread upon the record, but not so if it had been a bail bond.

No such state of facts exists in the case at bar as in the Owen case, supra. In the latter a recognizance was entered into by the accused with certain sureties for his appearance before a justice of the peace. Neither the principal nor the sureties signed the same in the presence of the justice, and none of them appeared be-

fore him at any time for that purpose, nor was any acknowledgment made before him of said obligation by either the principal or his sureties. In the case at bar, which is not a recognizance, but a bail bond, the principal signed the obligation in the presence of the probate judge, and the surety, while he declared his intention to sign the bond before the probate judge, signed it elsewhere, but submitted to that officer a sworn statement of his qualifications as a surety, which were found sufficient, and upon the bond being submitted to the probate judge, with his personal knowledge of the signing of same by the principal and his identification of the signature of the surety and his knowledge as to his qualifications, he approved the same. There was, therefore, in the Owen case the existence of no such facts as would have authorized a holding that the obligation was valid, while in the case at bar there was a substantial compliance with the statute.

But while this clear distinction may be made between the facts in these two cases, the ruling in the Owen case is in error in not recognizing and defining the difference between recognizances and bail bonds. The principal authority to sustain the conclusion reached in the Owen case is that of State v. Pratt, supra, in which we have shown that the court erroneously based its authority for a ruling in regard to a bail bond upon a case which had no relation to obligations of that nature. The ruling in the Pratt case being, as we have sufficiently demonstrated, without foundation, the Owen case, which leans upon it as its sole support, must fall with it.

But the appellant contends, nevertheless, that the Pratt and Owen cases correctly declare the law as found in that section of the statute which provides that: "Sureties in recognizances in criminal cases and proceedings shall be residents of this State, and shall be worth, over and above the amount exempt from execu-

tion, and the amount of their debts and liabilities, the sum in which bail is required; and the person or persons offered as sureties may be examined on oath in regard to their qualifications as sureties, and other proof may be taken in regard to the sufficiency of the same. The officer authorized to take any such recognizance is authorized to administer all necessary oaths in that behalf." [Sec. 5127, R. S. 1909.] This section, literally interpreted, only has reference to recognizances; but we are not inclined, under a proper state of facts, to thus limit its application, and in so far as it may be held to apply to bail bonds it was substantially complied with in the instant case. Its purpose is to enable the court or officer taking the obligation to satisfy himself as to the sufficiency of the sureties offered in rendering it permissible for him to examine them on oath in regard to their qualifications. While this was not done in the instant case by personal examination, a sworn statement was voluntarily filed by the surety and found to be sufficient by the judge. The purposes, therefore, of the statute were fully complied with, and under such circumstances an obligation for the appearance of one charged with crime should not, upon his becoming a fugitive from justice, he held invalid so as to release his sureties because of a failure to comply with the letter of the law. Is it not said that "the letter killeth, but the spirit giveth life?" [2 Cor. 3: 6.]

The statute was not intended to be interposed as a shield behind which a surety could hide himself to prevent a payment of the obligation which he has voluntarily entered into, but it was for the protection of the public in providing a method by which the court or officer taking the obligation would be enabled to ascertain whether the parties offered as sureties were such as the law required. For a like purpose was the statute enacted which provides that "no recognizance shall be

taken unless the court or officer authorized to take the same shall be satisfied, from proof and examination on oath or otherwise, of the sufficiency of the sureties according to the requirements of this and the preceding sections.'' [Sec. 5128, R. S. 1909.]

While it may be true, as stated in the Owen case, although it is not material to the matter here at issue, that a judicial officer before whom a criminal case is pending acts judicially in passing upon the validity of a recognizance, it does not follow therefrom that a bail bond taken under the general requirements of the statute by a judge before whom a case is not pending and not partaking of the nature of a recognizance, as we will presently show in further defining the differences between them, should be held invalid where the principal executed the bond in the presence of the officer, although the surety signed the same elsewhere, provided the sufficiency of the bond was not in other respects questioned.

In so far, therefore, as the rulings in the Pratt and Owen cases, supra, are in conflict with the conclusion herein reached, they are overruled.

Our statute in regard to recognizances and bail bonds nowhere requires, either in express terms or by reasonable implication, that bail bonds shall be signed by the sureties in the presence of the officer taking same; in discussing this question the distinctive differences between these two classes of obligations should be kept in mind, and that they may be clearly understood we have deemed it appropriate to set them forth with some degree of particularity.

A recognizance, as we have stated, is an obligation acknowledged and entered into in open court or by the appearance of the principal and his sureties before the officer taking same, in which the recognizor, with sureties, binds himself under a penalty to do some particular thing, usually to appear before the court to answer a criminal charge; one of the necessities of the exist-

ence of a recognizance is that it should be a matter of record, but it is not necessary that it be signed either by the recognizor or his sureties (State ex rel. v. Morrison, 244 Mo. l. c. 206); it is in the nature of a conditional judgment which may be enforced against the property of the recognizor and his sureties in the event the former makes default in his appearance. A recognizance, therefore, is an acknowledgment upon the record of a debt already due.

A bail bond is an obligation required under the common law to be under seal, but not so here, where seals have been abolished; it must be signed by the party giving the same, with one or more sureties, under a penalty, conditioned to do some particular thing, usually, as in recognizances, to appear to answer some charge. Its execution, approval and delivery effect the creation of a contract, or debt not of record, and give it its binding effect. It may be taken in court or out of court in vacation. An acknowledgment does not add to its effectiveness, and there is nothing in its nature or terms which requires that it should be signed in the presence of the court or officer who takes same to render it valid. [Kansas City v. Fagan, 4 Kan. App. l. c. 798; Cole v. Warner, 93 Tenn. l. c. 159; People v. Barrett, 202 Ill. l. c. 297; Swan v. United States, 3 Wyo. l. c. 157; Clark's Crim. Procedure, pp. 84, 91, 93.]

Mindful of the differences between these two obligations, the Legislature has from time to time prescribed the manner in which one accused of crime may be admitted to bail, limiting the right at times to one form of obligation and at other times to the other, or, as is authorized by the present statute, permitting the taking of either.

Prior to 1879 the method provided for the release *sub modo* of a person charged with crime was by recognizance (Sec. 1829, R. S. 1879); this method was continued until 1881, when it was provided that one let to

bail should be required to enter into a bond (Laws 1881, p. 118); for eight years thereafter this manner of effecting a temporary release was continued, when the statute was amended so as authorize the taking of a *bond or recognizance* (Sec. 4123, R. S. 1889; Sec. 2543, R. S. 1899); in 1907 the statute of 1889 was amended, not as to its material features, but to permit the clerk in the absence of the judge to take the obligation of the accused. [Laws 1907, p. 244, now Sec. 5123, R. S. 1909.] Since that time no changes have been made in the statute except to insert the words "if the court is not in session" in lieu of the words "if the judge is not in the county." [Laws 1913, p. 226.]

These statutes indicate the purpose of the Legislature to prescribe, during the different periods included, the form of obligation required. If the statute prescribed a bond, it is evident that no other form of obligation was intended, and a like rule applies if a recognizance was required. This being true, it cannot be said, with any regard for the rules of construction, that if the statute, as at present, provides that either form of obligation may be taken, the alternative authority thus granted was intended to obliterate the distinctions between the two forms of obligation or that the requisites necessary to effect the validity of one form could be indiscriminately applied to the other. The contrasted differences between the two forms heretofore shown are sufficient to disclose the futility of appellant's contention that the requisites to their validity must conform to the same standard. If, therefore, a recognizance is to be taken, such steps may be pursued as are necessary to render valid this form of obligation, and a like rule applies if a bail bond is to be taken. There being nothing in the nature of a bail bond requiring it to be signed by the sureties in the presence of the court or officer taking same (Kansas City v. Fagan, supra), in the absence of a statute directing such a signing we hold that it is not a prerequisite to

the validity of the bond, especially under the facts of this particular case.

Appellant further contends that to render an obligation of the nature of the one under review valid it is necessary that it be spread upon the records of the probate court of Worth county. This contention is based upon the statute which provides that "All recognizances taken in a court of record in term shall be entered of record, and all recognizances required or authorized to be taken in vacation in any criminal case, or proceeding of a criminal nature, shall be in writing, and signed by the parties to be bound thereby." [Sec. 5125, R. S. 1909.] To render this statute applicable under the contention of the appellant it is necessary to assume that the obligation is a recognizance, because one of the essentials of its creation is that it be "entered of record." But not so with bail bonds, or, as the latter part of the statute reads, "all recognizances required or authorized to be taken in vacation," if by this is meant bail bonds which are only required to be in writing and signed by the parties to be bound thereby. An examination of the form of the obligation in the instant case, set forth in the statement, shows that it fills the requirements of a bail bond and not those of a recognizance. Neither under the statute, therefore, upon which the appellant relies, nor from the nature of the instrument itself, is a substantial reason to be deduced for the entry of such instrument upon the record. The instrument being in the nature of a bail bond and not a recognizance, the endorsements thereon show that after it was taken and approved by the probate judge it was filed in the office of the circuit clerk, where the criminal case against the principal was pending. Being in other respects in compliance with the law, this was all that was necessary to render it effective and binding upon the parties thereto.

A contention is also made by the appellant that, because the accused was admitted to bail by the probate court rather than the judge thereof, this should render the first provision of the statute above quoted (Sec. 5125) applicable, namely, in requiring recognizances taken during term time to be entered of record. While we have held that probate courts are authorized to entertain jurisdiction in *habeas corpus* cases of the nature of the one here in question, and the record discloses that a hearing was had under the *habeas corpus* statute, it does not follow therefrom that the power to take bail was limited to the provisions of that statute, but, independent of same and regardless of whether a writ of *habeas corpus* had been issued, the judge of the probate court, especially in the absence from the county of the judge of the circuit court in which the criminal case was pending, was authorized to "let to bail any party indicted for a bailable offense in the county in which the indictment is pending." [Sec. 4061, R. S. 1909; State v. McElhaney, 20 Mo. App. 584.] The statute conferring this power being un-equivocal in its terms and supplemental to the general statutes in regard to bail, "it is," as THOMPSON, J., cogently says in the McElhaney case, "quite immaterial how the prisoner was brought before the probate judge." Notwithstanding the sweeping character of the power thus declared to exist, we have, in the absence of an express statute or other ruling thereon than the McElhaney case, limited the section (4061) to cases where the judge of the court in which the criminal case was pending was absent from the county at the time the application for bail was made to the probate judge, such interpretation being more in harmony with the object and purpose of the general statutes on this subject. From all of which we hold that it was not necessary to the validity of the bond that it should have been entered upon the records of Worth county.

The appellant voluntarily became the sponsor of the accused. In the taking of the bond by which this relation was created, the appellant was deprived of no substantial right; he has, therefore, no just cause of complaint. His defense is purely technical, and the judgment of the trial court should in all things be affirmed and it is so ordered.

*Woodson, Faris* and *Blair, JJ.*, concur; *Graves, J.*, dissents in separate opinion in which *Brown* and *Bond, JJ.*, concur.

GRAVES, J. (dissenting).—I desire to express no opinion upon the merits of this case. It may be that my learned brother has wrought well in the work of untangling the question involved upon the merits of the controversy. I dissent upon the ground that I am satisfied that this court has no jurisdiction of the case. As expressive of my views upon this question of jurisdiction, I adopt the opinion of RAILEY, Commissioner, filed in Division One, as follows:

"Respondent suggests that the case should be transferred to Division Two for the following reasons:

"First. Because this suit is an action of the State of Missouri against above appellant under *scire facias* for forfeiture of a criminal bond and jurisdiction of same is alleged to be in Division Two of this court.

"Second. Because under the Constitution of this State and the decisions of this court, Division Two has jurisdiction of this cause.

"This suit grows out of the forfeiture of a recognizance taken in the case of the State of Missouri v. O. K. Hanson, who was charged with bigamy in the circuit court of Worth county, Missouri.

"Judgment was entered against defendant as surety of Hanson for $1500 and costs. Defendant appealed to the Supreme Court, and the case was assigned to this division.

"Section 1 of article 6, Constitution of Missouri of 1875, as amended in 1890, provides, that:

" 'The Supreme Court shall consist of seven judges, and . . . shall be divided into two divisions, as follows: One division to consist of four judges of the court and to be known as division number one, the other to consist of the remaining judges and to be known as division number two. The divisions shall sit separately for the hearing and disposition of causes and matters pertaining thereto, and shall have *concurrent* jurisdiction of all matters and causes in the Supreme Court *except* that division number two shall have exclusive cognizance of all *criminal cases pending* in said court.'

"Section 3 of article 6 of said Constitution provides that:

" 'The Supreme Court shall assign to each division the causes and matters to be heard by it.'

"The defendant is not charged with a crime. A moneyed judgment was rendered against him in the trial court for $1500 and costs. While the present suit grew out of the original criminal proceeding, and is based thereon, it is a *civil* action pure and simple, and should be dealt with accordingly.

"In State v. Kinne, 39 N. H. 129, the subject of *scire facias* is fully and ably discussed. It is held that the writ must issue from the court which has the record upon which it is founded, yet Judge EASTMAN said: 'Upon the forfeiture of a recognizance, the practice in this State is, if the recognizance is not paid or settled to the satisfaction of the prosecuting officers, to bring *scire facias* against the recognizors, by which they are summoned to show cause why execution should not issue against them for the amount forfeited, and costs of the *scire facias*. It is a civil proceeding, and the defendant, if he succeed, is said to be entitled to costs. [Commonwealth v. Stebbins, 4 Gray, 25; State v. Harlow, 26 Me. 74; Potter v. Tit-

State v. Wilson.

comb, 1 Shepl. 36.] . . . That the forfeiture of a recognizance creates an absolute debt of record, which is in the nature of a judgment, *is sustained by all the authorities.* That a *scire facias* is a proper form of proceeding to enforce the collection of such a debt, is equally well settled.'

"In State v. Harlow, 26 Me. 1. c. 76, Judge TENNEY said: 'The *scire facias* is merely to obtain the forfeiture, *and is often against those not implicated in the criminal offense charged.* The action must be regarded as of a civil nature, equally with one in another form upon a note which may be given to the State in satisfaction of the costs, which are a part of the sentence on conviction of a crime. The case before us is a *civil* suit instituted by the State, for its own use and benefit, and the defendant prevailed, and is entitled to his costs.'

"The cases cited by the Attorney-General simply sustain the right of Division Two to pass upon cases of this character, where the amount involved is sufficient to confer jurisdiction, and where the case has been assigned to said division in its regular order. The case having been regularly assigned to *this* division occupies the same position it would have sustained had it been regularly assigned to Division Two. In other words, this division of the court would have jurisdiction over the cause, if the amount involved were sufficient to confer such jurisdiction.

"'The *original* case, in which Hanson was charged with bigamy, is *not* before this court for review. The State has obtained a judgment against Hanson's surety for $1500, which, if affirmed, will subject him to payment of same on execution. In my opinion this is clearly a *civil* action, and as the amount of recovery is not sufficient to give the Supreme Court jurisdiction, the cause should be transferred to the Kansas City Court of Appeals; but as the conclusion reached is in

conflict with the majority opinion in State v. Grant, 252 Mo. 602, the case is certified to Banc.''

*Brown* and *Bond, JJ.,* concur in these views.